[Cite as *Myers v. Myers*, 2012-Ohio-2282.]

STATE OF OHIO         )                IN THE COURT OF APPEALS
                         )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

DAWN MYERS                         C.A. No.       25997

        Appellant

        v.                              APPEAL FROM JUDGMENT
                                     ENTERED IN THE
JEFFREY G. MYERS             COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
        Appellee                  CASE No.     2003-01-0261

DECISION AND JOURNAL ENTRY

Dated: May 21, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Jeffrey and Dawn Myers divorced in 2004. The trial court originally named Ms. Myers residential parent of the parties' children, but, in 2009, it reallocated all parental rights and responsibilities to Mr. Myers. Ms. Myers appealed, and this Court affirmed the trial court's decision. After this Court decided her appeal, Ms. Myers moved to increase her parenting time. The trial court subsequently ordered the parties to participate in mediation. Before the mediation session, however, Mr. Myers accepted an employment transfer to Arkansas. He, therefore, filed a notice of intent to relocate under Section 3109.05.1(G) of the Ohio Revised Code. Ms. Myers opposed the relocation by filing a motion for change of custody, a motion for ex parte temporary restraining order, and a motion to appoint a new guardian ad litem. The court set a hearing on her motions. Before the hearing, Ms. Myers also moved the court to interview the parties' minor child. At the hearing, the court received testimony regarding "the notice of Mr. Myers to

relocate with the minor child and the opposition filed by [Ms. Myers]." Following the hearing, the court entered an order on Mr. Myers's "Notice of Intent to Relocate and [Ms. Myers's] Motion in Opposition and [her] Motion for an Emergency Ex Parte Order prohibiting [him] from removing the parties' minor child from the State of Ohio." The order denied Ms. Myers's motion for a temporary restraining order and allowed Mr. Myers to relocate to Arkansas. It also modified Ms. Myers's parenting time and set her other motions for a later settlement conference. Ms. Myers has appealed, arguing that the trial court's conduct and decision were unreasonable, arbitrary, and unconscionable and demonstrated a perversity of will, passion, prejudice, and partiality. According to her, the court ignored her motion to appoint a new guardian ad litem, incorrectly failed to interview the parties' minor child, and exercised improper discretion when it modified her parenting time. We affirm because Ms. Myers's argument regarding a new guardian ad litem is not ripe, the court did not have to interview the parties' daughter, it exercised proper discretion when it temporarily changed Ms. Myers's parenting time, and we do not have authority to review claims of improper bias.

JURISDICTION

{¶2} Mr. Myers has argued that this Court does not have jurisdiction over the appeal because the trial court's decision was merely an interim visitation order. Under the Ohio Constitution, Ohio's courts of appeals "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district . . . ." Ohio Constitution, Article IV, Section 3(B)(2). The Ohio Supreme Court has held that that language empowers the General Assembly to define the jurisdiction of Ohio's courts of appeals. *State v. Collins*, 24 Ohio St. 2d 107, 108 (1970). The General Assembly, in Section 2501.02 of the Ohio Revised Code, has provided that the courts of

appeals "shall have jurisdiction . . . to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district . . . ." *See also* R.C. 2505.03(A) (providing that "[e]very final order, judgment, or decree of a [lower] court . . . may be reviewed on appeal"); *Humphrys v. Putnam*, 172 Ohio St. 456, 457 (1961).

{¶3} Section 2505.02(B) defines "final order." Under that section, "[a]n order is a final order . . . when it is . . . (1) [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment; (2) [a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment; (3) [a]n order that vacates or sets aside a judgment or grants a new trial; (4) [a]n order that grants or denies a provisional remedy . . . (5) [a]n order that determines that an action may or may not be maintained as a class action; (6) [a]n order determining the constitutionality of any changes to the Revised Code made by Am. Sub. S.B. 281 of the 124th general assembly . . . or any changes made by Sub. S.B. 80 of the 125th general assembly . . . [or] (7) [a]n order in an appropriation proceeding that may be appealed pursuant to [Section 163.09(B)(3) of the Ohio Revised Code]."

{¶4} Divorce and ancillary custody proceedings did not exist at common law, but were created by statute, and are special proceedings within the meaning of Section 2505.02 of the Ohio Revised Code. *State ex rel. Papp v. James*, 69 Ohio St. 3d 373, 379 (1994). The question in this case, therefore, is whether the trial court's order "affects a substantial right." A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). An order affects a substantial right "if, in the absence of an immediate appeal, appropriate relief would be foreclosed in the future." *In re A.P.*, 196 Ohio App. 3d 500, 2011-

Ohio-5998, ¶ 8 (9th Dist.) (citing *Southside Cmty. Dev. Corp. v. Levin*, 116 Ohio St. 3d 1209, 2007-Ohio-6665, ¶ 7).

{¶5}    The trial court's order allows Mr. Myers to move out of state with the parties' minor child and changes Ms. Myers's parenting time.  Although the court set a later conference on Ms. Myers's motion for change of custody, the court's order affects Ms. Myers's ability to see her daughter until the court hears and decides that motion.  We, therefore, conclude that the order from which Ms. Myers has appealed affects a substantial right in a special proceeding under Section 2505.02(B)(2) and is an appealable final order under Section 2501.02.

GUARDIAN AD LITEM

{¶6}    Ms. Myers's assignment of error is that the trial court's conduct at its hearing and its subsequent decision on her motions were unreasonable, arbitrary, and unconscionable and demonstrated a perversity of will, passion, prejudice, and partiality.  Her first argument is that the court incorrectly ignored her motion to appoint a new guardian ad litem.  In her motion, she noted that she had previously accused the guardian ad litem of testifying falsely under oath.  She asserted that, because of her accusation, the guardian ad litem would not be able to render an impartial opinion.  She also asserted that, whatever the guardian ad litem might say, her daughter had told her that she does not want to move to Arkansas.

{¶7}    At the hearing and in its decision, the trial court only considered the effect of Mr. Myers's notice of intent to relocate and Ms. Myers's motion for a temporary restraining order to prevent Mr. Myers from removing their daughter from the state.  *See* R.C. 3109.05.1(G)(1) (allowing a court to schedule a hearing to determine whether the parenting time schedule should be revised after a parent has filed a notice of intent to relocate).  While the court recognized that Ms. Myers had moved for the appointment of a new guardian ad litem, it reserved that issue for

consideration at a later settlement conference. Accordingly, Ms. Myers's argument is premature. *Keller v. Columbus*, 100 Ohio St. 3d 192, 2003-Ohio-5599, at ¶26 ("In order to be justiciable, a controversy must be ripe for review."). Considering that the court scheduled a hearing on Ms. Myers's "[e]mergency" motion for a restraining order less than a month after she filed it, we conclude that the court exercised proper discretion when it declined to address the guardian ad litem question at the same time.

CHILD INTERVIEW

{¶8} Ms. Myers's second argument is that the trial court incorrectly failed to interview the parties' daughter before making its decision. She has noted that, under Section 3109.04(B)(1) of the Ohio Revised Code, "upon the request of either party," a court "shall interview in chambers any or all of the involved children regarding their wishes and concerns . . . ."

{¶9} Section 3109.04(B)(1) applies when a court is "making the allocation of the parental rights and responsibilities for the care of the children . . . in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation[.]" In this case, the court was considering whether Mr. Myers should be enjoined from taking the child to Arkansas and whether it was "in the best interest of the child to revise the parenting time schedule for the child" under Section 3109.05.1(G)(1). Section 3109.05.1(C) provides that, "[w]hen determining whether to grant parenting time rights to a parent pursuant to this section . . . when establishing a specific parenting time or visitation schedule, and when determining other parenting time matters under this section . . . the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns." Unlike Section

3109.04(B)(1), Section 3109.05.1(C)(1) does not require a court to interview a minor child about her wishes just because a parent has requested it.

{¶10} Similarly to Ms. Myers's motion for appointment of a new guardian ad litem, the court noted in its journal entry that Ms. Myers had also filed a motion for change of custody, but reserved the motion for later consideration. Upon review of the record, we conclude that, because the trial court was not considering whether to reallocate the parties' parental rights and responsibilities, but only whether to revise the parenting time schedule, it was not required to interview the Myerses' daughter before making its decision.

## PARENTING TIME

{¶11} Ms. Myers's third argument is that the trial court's parenting time decision was unreasonable and unconscionable. The court's order provides that, if Ms. Myers travels to Arkansas, she may spend up to six hours a day with her daughter, but that she may only spend three days with the daughter on any one trip. The order also provides that, if Mr. Myers travels back to Ohio, he must arrange a six-hour visit between Ms. Myers and the daughter. Ms. Myers has argued that the trial court's order effectively takes away all of her parenting time.

{¶12} Under the prior parenting time order, Ms. Myers was allowed eight hours of companionship time every Sunday. If a child's residential parent files a notice of intent to relocate, the court "may schedule a hearing . . . to determine whether it is in the best interest of the child to revise the parenting time schedule for the child." R.C. 3109.05.1(G)(1). "In determining . . . parenting time matters . . . , the court shall consider . . . (1) [t]he prior interaction and interrelationships of the child with the child's parents . . . (2) [t]he geographical location of the residence of each parent and the distance between those residences, . . . (3) [t]he child's and parents' available time . . . (4) [t]he age of the child; (5) [t]he child's adjustment to home, school,

and community; (6) [i]f the court has interviewed the child in chambers, . . . the wishes and concerns of the child, as expressed to the court; (7) [t]he health and safety of the child; (8) [t]he amount of time that will be available for the child to spend with siblings; (9) [t]he mental and physical health of all parties; (10) [e]ach parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights . . . (11) [i]n relation to parenting time, . . . whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; . . . (13) [w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (14) [w]hether either parent has established a residence or is planning to establish a residence outside this state; . . . [and] (16) [a]ny other factor in the best interest of the child." R.C. 3109.05.1(D).

{¶13} The trial court noted Mr. Myers's intent to move to Arkansas and the parties' history, including its prior determination that the daughter's life with Ms. Myers had been marked by invasive medical care and dominated by a fear of illness and death, that the daughter's health had improved while living with Mr. Myers, that Mr. Myers would more likely honor and facilitate a relationship with the other parent, and that the daughter's doctors had contacted the Children Services Board while she was in Ms. Myers's care. It also noted that Ms. Myers had been unable to accept that the reason her daughter had been subjected to unnecessary medical treatment was because of misinformation Ms. Myers had provided to doctors. Upon review of the trial court's order, it appears that the court considered all of the relevant factors required under Section 3109.05.1(D).

{¶14} Ms. Myers has also argued that the court misunderstood the facts of this case. According to her, the court has treated her as if she suffers from Munchausen syndrome by

proxy, also known as Pediatric Condition Fabrication, even though this Court's previous opinion concluded that the evidence did not substantiate it. In this Court's previous opinion, we concluded that the evidence did not substantiate allegations that Ms. Myers suffered from Pediatric Condition Fabrication or that she had abused or neglected the parties' daughter. *D.M. v. J.M.*, 189 Ohio App. 3d 723, 2010-Ohio-3852, ¶ 13, 30-31 (9th Dist.). This Court, however, did not reject the daughter's doctor's suspicions that Ms. Myers "had falsified or exaggerated [the daughter's] symptoms." *Id.* at ¶ 13.

{¶15} The trial court noted that Ms. Myers testified at the relocation hearing that she was only following doctor's orders when she managed her daughter's care. It found that she "still refuses to acknowledge" that those orders were based on misinformation that she had provided. The trial court's finding is consistent with the evidence presented at earlier hearings and is not inconsistent with our prior opinion in this case. We also note that the trial court's modified companionship-time order was simply "[p]ending further hearing in this matter." Considering that Ms. Myers had only previously been allowed eight hours a week with her daughter, which we previously determined was a proper exercise of discretion, we conclude that the limited visitation schedule imposed by the trial court was not unreasonable, arbitrary, or unconscionable.

## PASSION, PREJUDICE, OR PARTIALITY

{¶16} Ms. Myers's final argument is that the trial court has developed "a passion, prejudice, and partiality" against her that is not supported by the evidence. She has argued that, although Mr. Myers was allowed to cross-examine her about their daughter's medical treatment, her lawyer was not allowed to ask her about the same issues on redirect. She has also argued that the court ignored the evidence, clinging, instead, to its unsupported preconceptions about her

mental health. She has further argued that the court's bias led it to find that her testimony was not credible.

**{¶17}** If a party believes that a common-pleas-court judge is prejudiced or has exhibited bias, she may file an affidavit of disqualification under Section 2701.03 of the Ohio Revised Code. *Shih v. Byron*, 9th Dist. No. 25319, 2011-Ohio-2766, at ¶ 24; R.C. 2701.03(A). An Ohio district court of appeals "has no authority to render a decision with regard to disqualification, or to void a trial court's judgment on the basis of personal bias or prejudice on the part of a trial judge." *State v. Hunter*, 151 Ohio App. 3d 276, 2002-Ohio-7326, ¶ 18 (9th Dist.) (citation omitted) (citing *Beer v. Griffith*, 54 Ohio St. 2d 440, 441-42 (1978)). Accordingly, we do not have authority to address Ms. Myers's prejudice arguments or to overturn the court's decision for that reason. *Shih*, 2011-Ohio-2766, at ¶ 24 ("It is not the role of this Court to make a determination as to whether the trial court exhibited a bias against a party."). Ms. Myers's assignment of error is overruled.

## CONCLUSION

**{¶18}** The trial court has not yet ruled on Ms. Myers's motion to appoint a new guardian ad litem or her motion for change of custody. The court exercised proper discretion when it temporarily changed Ms. Myers's parenting time. This Court does not have authority to review claims of improper bias. The judgment of the Summit County Common Pleas Court, Domestic Relations Division, is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

DEAN S. HOOVER, Attorney at Law, for Appellee.